IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| William L. Galley and | § | Case No. 06-12142-JNF |
| Laurie A. Galley | § | |
| | § | Chapter 13 |
| | § | |
| WILLIAM K. HARRINGTON, | § | |
| the United States Trustee for Region 1, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary Proceeding No. 08-01272 |
| | § | |
| CAPITAL ONE BANK (USA), N.A. | § | |
| Defendant. | § | |

**FOURTH INTERIM REPORT**
**OF COURT-APPOINTED AUDITOR, MELANIE L. CYGANOWSKI**

The Court-appointed auditor, Melanie L. Cyganowski (the "Auditor"), respectfully submits this Fourth Interim Report[1] to advise the Court of the status and progress of the work performed to date by the Auditor and the Auditor's retained professionals.

## I. EXECUTIVE SUMMARY

The audit conducted by the Auditor arose from a complaint filed by Phoebe Morse, the United States Trustee for Region 1 (the "United States Trustee),[2] against Capital One Bank (USA), N.A. ("Capital One") in 2008. The Complaint commenced an adversary proceeding (the "Adversary Proceeding")[3] in the United States Bankruptcy Court for the Eastern District of Massachusetts (the "Court") relating to the Chapter 13 bankruptcy case of *In re William L. Galley and Laurie A. Galley*, 06-12132-JNF. The Complaint alleged, among other things, that Capital One had filed more than one hundred thousand proofs of claim per month on average, seeking payment as an unsecured creditor from the bankruptcy estates of its open-end credit card account customers. The Complaint further alleged that in 2005, Capital One's procedures for identifying customers who had previously filed for bankruptcy failed and that Capital One improperly filed approximately 5,600 proofs of claim in bankruptcy cases of debtor-customers whose debt previously had been discharged, thereby violating prior Orders of discharge and resulting in the improper collection by Capital One of approximately $340,000.00.

The parties thereafter entered into negotiations and ultimately entered into that certain Stipulated Final Judgment & Order, approved by the Court on November 20, 2008 [Dkt. No. 23], as amended (the "Consent Judgment"). Among other things, the Consent Judgment sets forth a process by which the Auditor, with the cooperation of Capital One, reviews and

---

[1] The Auditor submitted three previous interim reports: the *First Interim Report of the Court-Appointed Auditor, Melanie L. Cyganowski*, dated September 25, 2009 [Docket No. 52], the *Second Interim Report of the Court-Appointed Auditor, Melanie L. Cyganowski*, dated February 12, 2010 [Docket No. 77][1] and the *Third Interim Report of the Court-Appointed Auditor, Melanie L. Cyganowski*, dated August 30, 2010 [Docket No. 93]. Capitalized terms used but not otherwise defined in this *Fourth Interim Report* shall have the meanings ascribed to them in the Auditor's *First, Second and Third Interim Reports*, which are incorporated as if fully set forth herein.

[2] Subsequently, William K. Harrington succeeded Ms. Morse and is currently the United States Trustee for Region 1.

[3] The Adversary Proceeding was captioned: *Phoebe Morse, the United States Trustee for Region 1 v. Capital One (USA) NA*, 08-01272-JNF.

audits the process by which Capital One filed proofs of claim during the several periods at issue, and the remediation process going forward. The Consent Judgment also describes the procedures for selecting an Auditor, the reports that Capital One is required to submit for certification by the Auditor and the obligations of Capital One to withdraw the erroneously filed proofs of claim and ultimately make refunds to those parties who were adversely affected by Capital One's filing of erroneous claims. The first stage of the audit covered proofs of claim filed during the period from January 1, 2005 through the date upon which the Consent Judgment was entered, November 20, 2008 (the "First Audit Period"). In the Consent Judgment, Capital One denies any wrong-doing or improper actions and notes its voluntary decision to take action to review and remediate its processing of proofs of claim in consumer bankruptcy cases.

As described more fully below, the Auditor has filed Interim Reports that reflect the underlying process by which Capital One and the Auditor have distilled large amounts of data to identify the erroneous claims filed by Capital One during the relevant period and the distributions received by Capital One on account of such claims. The original data pool for the First Audit Period consisted of approximately 1.9 million claims. This information was then distilled into smaller subsets by successive applications of criteria determined jointly by Capital One, the United States Trustee and the Auditor.

The Auditor and the Auditor's professionals have substantially completely the audit of the Reports issued by Capital One with respect to the proofs of claim filed during the First Audit Period. As a result of the Auditor's certification of Capital One's Distributions and Refund Report [Dkt. No. 95], on November 15, 2010, Capital One initiated the return of distributions it received on account of claims that it had erroneously filed that had not previously been refunded by Capital One. During her Audit of the erroneous claims filed during the First Audit Period, the Auditor and her representatives conducted numerous tests that included, in addition to other analyses: (i) comparing and cross-testing data from 39 separate Bankruptcy Courts against (ii) the corresponding data found in over 306,000 bankruptcy cases in the Master Claims Report, over 56,000 bankruptcy cases in the Prior Case Report and over 17,000 bankruptcy cases in the initial Erroneous Claims Report. In addition, the Auditor and her representatives conducted random sample testing in which data

set forth in the Erroneous Claims Report and the Distributions and Refund Report was specifically checked for accuracy against publicly available records, and a random sampling of copies of the front and back of refund checks sent to debtors or trustees was undertaken to confirm that such checks were actually delivered to the debtors or trustees who were owed refunds.

The Complaint filed by the United States Trustee alleged that in 2005 Capital One improperly filed approximately 5,600 proofs of claim in bankruptcy cases of debtor-customers whose debt had previously been discharged, violating discharge orders and resulting in the improper collection of approximately $340,000. As a result of the Audit undertaken by the Auditor, for the First Audit Period, the Audit revealed that approximately 15,500 proofs of claim were filed by or on behalf of Capital One in the total amount of approximately $24.7 million that appear to have been erroneously filed. The filing of these erroneous claims resulted in the improper collection by Capital One of approximately $2.35 million on account of approximately 5,100 erroneously filed proofs of claim. Throughout the process, Capital One has fully cooperated in each phase of the Audit and remediation. At this juncture, Capital One has returned, or is in the process of returning, the approximate $2.35 million that it received as a result of the filing of the erroneous claims to the debtors and or trustees in the affected bankruptcy cases.

The Consent Order also directed the Auditor and her professionals to determine the amount of reasonable fees and expenses to be paid to debtors and/or trustees who incurred these costs when objecting or filing adversary proceedings resulting from the erroneously filed proofs of claim. As part of this process, the Auditor will solicit the information from these parties, determine if the amount of fees and expenses sought are reasonable, and Capital One will then reimburse such fees and expenses. The Auditor is also in the process of establishing a website as an additional source of information for debtors and trustees.

## II. BACKGROUND

As described in more detail in the *First, Second and Third Interim Reports*, by Order dated December 15, 2008 [Docket No. 32] (the "Auditor Order"), the Court appointed the

Auditor to conduct the audit (the "Audit") as described in the Consent Judgment, agreed to by the parties to the Adversary Proceeding.

**A. Duties of the Auditor**

In accordance with the Consent Judgment, the Auditor is required to direct and supervise Capital One's Corporate Audit Services team ("CAS") in CAS's reviews of Capital One's business records and review and certify the contents of reports prepared by Capital One under the direction of the Auditor, including (i) the Master Claims Report, (ii) the Prior Case Report, (iii) the Erroneous Claims Report, and (iv) the Distributions and Refund Report (each, a "Report"). The Reports for the First Audit Period reflect the process by which the Auditor and Capital One have identified instances in which Capital One filed a proof of claim in the bankruptcy case of a Capital One account holder for a debt that had been discharged by a previous bankruptcy (such claims, the "Erroneous Claims").

Pursuant to the Consent Order, the Auditor and the Auditor's professionals will also conduct an Audit for the twelve month period between November 21, 2008 and November 20, 2009 (the "Second Audit Period") and the twelve month period between November 21, 2009 and November 20, 2010 (the "Third Audit Period"). The Audits will be extended for one additional year for each Erroneous Claims Report related to either of the Second Audit Period or the Third Audit Period in which the number of Erroneous Claims exceeds one hundred (100) claims.

**B. The Master Claims Report (the "MCR")**

The auditing and distillation process began with approximately 1.9 million accounts with the initial goal of arriving at a Master Claims Report, which identifies the consumer accounts with respect to which Capital One caused a proof of claim to be filed during the First Audit Period. The Master Claims Report (the "MCR") sets forth information, including, without limitation, the debtor's name, the amount of the claim(s) filed by Capital One, and the court and case numbers for the relevant consumer bankruptcy cases. The Master Claims Report ultimately concluded with more than 600,000 records. After the audit

process described in the *First Interim Report*, the Auditor certified the Master Claims Report on October 14, 2009 [Docket No. 54].[4]

### C. The Prior Claims Report (the "PCR")

Following certification of the Master Claims Report, Capital One prepared the Prior Case Report (the "PCR"), which consists of the records in the Master Claims Report for which the accounts are held by debtors who also filed bankruptcy cases prior to the bankruptcy cases in which the claims listed in the Master Claims Report were filed. The PCR includes approximately 110,000 records. On February 12, 2010, the Auditor filed her *Second Interim Report* in which, among other things, the Auditor detailed the time-consuming nature of the review of the data contained in the PCR and briefly described the process the Auditor engaged in to review the data in the PCR. In addition, the Auditor advised that, because some anomalies were discovered that required additional data from Capital One, she and her counsel needed additional time to be in a position to certify the PCR. Shortly thereafter, and consistent with the *Second Interim Report*, on March 10, 2010, the Auditor certified the PCR [Docket No. 79].

### D. The Erroneous Claims Report (the "ECR")

Following certification of the PCR, Capital One prepared the Erroneous Claims Report (the "ECR"), which identifies those claims filed in error by Capital One because they were duplicative of and included debt which had been discharged as part of an earlier filed bankruptcy case for that debtor-customer (the "Erroneous Claims"). Prior to the delivery of the ECR, the Auditor and Capital One had numerous conference calls regarding the Auditor's questions with respect to the PCR and regarding the methodology to be utilized in preparation of the ECR. Capital One delivered the ECR to the Auditor and her counsel on April 6, 2010 ("ECR 1").

---

4 On November 6, 2009, the Auditor filed an Amended Certification of Auditor [Docket No. 57], reflecting a nonsubstantive correction of a scrivener's error in the Certification of the Auditor.

The ECR includes in excess of 15,000 records[5] from the PCR for which Capital One filed an Erroneous Claim in a bankruptcy case during the First Audit Period. The ECR includes the following information, where applicable: (a) the date of any claim objection or adversary proceeding filing by the debtor or trustee related to an Erroneous Claim; (b) the date the Erroneous Claim was withdrawn; or (c) the date Capital One filed a pleading or notice of withdrawal for the Erroneous Claim. On May 13, 2010, the Auditor certified the first ECR Report, namely, ECR 1 [Docket No. 81].

Pursuant to the Consent Judgment, Capital One is required to withdraw Erroneous Claims that have not already been withdrawn, and then submit an updated ECR to the Auditor that reflects the revised status. Further, pursuant to the Consent Judgment, the Auditor is also required, after receipt of each successive ECR, to certify that the Erroneous Claims have been withdrawn or review the explanation of why they have not been withdrawn. If Capital One and the U.S. Trustee dispute whether a particular Erroneous Claim should be withdrawn, the bankruptcy court in which the Erroneous Claim was filed will adjudicate the dispute, and enforcement under the Consent Order will remain pending in this Court until resolution of such dispute by the bankruptcy court.

Subsequent to delivering ECR 1 to the Auditor, Capital One delivered six additional ECRs to the Auditor and her counsel on the following dates: June 14, 2010 ("ECR 2"), July 13, 2010 ("ECR 3"), August 11, 2010 ("ECR 4"), September 13, 2010 ("ECR 5"), October 14, 2010 ("ECR 6") and November 15, 2010 ("ECR 7"). Each iteration of the ECR provides a status update from the prior ECR with respect to withdrawn claims and reclassified claims. As of ECR 7, the Reports show that Capital One withdrew approximately 5,800 claims and completed all claim withdrawals in open cases. Regarding the universe of Erroneous Claims, information provided by Capital One indicates that: (i) approximately 15,500 records were identified as erroneous and required the withdrawal of proofs of claim erroneously filed; (ii) approximately 9,650 of the Erroneous Claims were filed in bankruptcy

---

5 Originally, the ECR included approximately 32,000 records, but subsequent review has resulted in reductions of the number of records included in the Report on account of duplicate records and records of non-erroneous claims inadvertently included in the Report.

cases that are now closed;[6] and (iii) approximately 25 of the Erroneous Claims identified to date were unable to be located by the courts and cannot be withdrawn.[7]

In addition, Capital One has indicated that it has removed from, or reclassified data in, the ECR for the following reasons:

- ECR 1: 4 claims were removed because they were not erroneous.
- ECR 2: 15,702 ECR records moved to the "Duplicate MCR ID" category; 464 out of the total 31,738 ECR records were part of the "Do Not Need to Withdraw (MCR ID not valid)" category; and 5 claims were categorized as "Do Not Need to Withdraw (not erroneous: invalid case)".
- ECR 3: 70 records reclassified as "Do Not Need to Withdraw (MCR ID Not Valid)"; 3 claims reclassified as "Do Not Need to Withdraw (not erroneous: invalid case)"; 9 claims reclassified as "Claim Disallowed"; and 4 claims reclassified as "Closed Case".
- ECR 4: 5 additional withdrawal notices submitted; 78 claims reclassified as "Already Withdrawn"; 70 records deleted that were classified as "Do Not Need to Withdraw (MCR ID Not Valid)" on the prior ECR; withdrawal detail for 21 claims reclassified as "Closed Case"; 2 claims reclassified as "Claim Disallowed"; and 1 claim reclassified from "Do Not Need to Withdraw (not erroneous: invalid case)" to "Withdrawal in Process".
- ECR 5: 309 additional withdrawal notices submitted; 1 claim reclassified as "Already Withdrawn"; withdrawal detail for 29 claims reclassified as "Closed Case"; 1 claim reclassified as "Claim Disallowed"; and 1 claim reclassified to "Do Not Need to Withdraw (MCR_ID not valid)".
- ECR 6: 92 additional withdrawal notices submitted; 6 claims reclassified as "Already Withdrawn"; withdrawal detail for 2 claims reclassified as "Closed Case"; 2 claims reclassified as "Claim Disallowed"; 20 claims updated in which an objection had been filed but not reflected on previous ECRs; and 1 claim in which the objection reason was reclassified to "other."

---

6. Pursuant to the *Sixth Amended and Agreed order: Tolling Current Deadlines and Requesting Order Recommendation* entered January 4, 2011 [Dkt. No. 97] (the "Sixth Amendment to Consent Judgment"), the deadline by which Capital One must withdraw Erroneous Claims in bankruptcy cases that were closed or dismissed as of the date that the ECR was certified was tolled until the Court entered the Order Approving the Auditor's Recommendation for Withdrawal of Claims in Closed Cases [Dkt. No. 98] (the "Auditor's Recommendation Order").

7 Capital One stated in ECR 7 that any refunds on account of claims that cannot be withdrawn will be issued as indicated on the Distribution and Refunds Report.

- ECR 7: 13 additional withdrawal notices submitted; withdrawal detail for 4 claims reclassified as "Closed Case"; and 23 claims reclassified to "Court unable to locate claim."

On October 22, 2010, the Auditor certified ECRs 2 through 5 [Dkt. No. 95]. The Auditor will be filing a certification with respect to ECR 6 and ECR 7, which it had not had an opportunity to review and analyze at the time of the filing of the October 22, 2010 certification.

### E. The Distributions and Refund Report (the "DRR")

The Consent Judgment directs the Auditor to supervise CAS's review of accounts in the ECR to determine the amount of any distributions received, or refunds issued, by Capital One on such claims. The Auditor must also supervise CAS in its itemization of such information in the Distributions and Refund Report (the "DRR"), which is to include the information provided by the ECR, the amounts of any distributions received and refunds made by Capital One,[8] and the person to whom any refund was issued. The Auditor is required to review the DRR and then either certify or object to its accuracy.

In furtherance of the requirements of the Consent Judgment, Capital One, Capital One's counsel, the Auditor and Auditor's counsel[9] conducted numerous conference calls and, on May 20, 2010, an in-person meeting in Richmond, Virginia. Capital One and the Auditor have discussed at length, among other things, the methodology for the preparation of the DRR, withdrawal of Erroneous Claims and the refund process. Capital One delivered the DRR to the Auditor on June 30, 2010 ("DRR 1"), and the Auditor immediately began working to determine the accuracy and reliability of the data contained therein.

Well before June 30, 2010, in anticipation of receipt of the DRR and recognizing the DRR would be based on the prior Reports (the MCR, PCR and ECR 1) and, thus, contain large amounts of different data types and data fields, the Auditor spent considerable time with her professionals discussing and devising the methodology and process for reviewing

---

[8] The Auditor must also certify whether distributions made on Erroneous Claims have been refunded, or file a certification explaining why they have not been made.

[9] Although not every party participated in every conference call and/or meeting, the collaborative and organic process described in the Auditor's previous interim reports has continued throughout the periods described in this *Fourth Interim Report*.

the DRR. These efforts began immediately after the Auditor completed her certification of ECR 1. As discussed in greater detail below, the Auditor and her professionals reviewed and analyzed bankruptcy court records relating to two subsets of data culled from ECR 1. The first subset initially consisted of all 816 records of Erroneous Claims identified on ECR 1 as having a claim objection or adversary proceeding related to the Erroneous Claim (the "Objection Subset"). The second subset consisted of 2,847 records of Erroneous Claims for which there was no related claim objection or adversary proceeding, which were randomly selected from ECR 1. The methodology utilized by the Auditor and her professionals to enable the Auditor to certify the DRR is described in detail in the *Auditor's Third Interim Report*.

On October 22, 2010, in addition to the certification of ECRs 2 through 5, the Auditor also certified that DRR 1, and the data presented thereon as of May 7, 2010, the date that Capital One advises is the date that data collection ceased, appears to involve appropriate methodology, to be statistically accurate, and to satisfy the appropriate provisions of the Consent Judgment. Further, pursuant to the Consent Judgment, Capital One was required to refund distributions relating to the Erroneous Claims in bankruptcy cases that were open as of May 13, 2010 (the "ECR Certification Date") within 30 days of the certification of the DRR. Accordingly, on November 15, 2010, Capital One initiated the refunds of distributions it received on Erroneous Claims with respect to bankruptcy cases that were open as of May 13, 2010 and for which Capital One had not previously refunded improper distributions.

Capital One had previously refunded certain distributions it received on account of Erroneous Claims. Of these, Capital One previously made distributions with respect to approximately 900 claims in the aggregate amount of approximately $260,000. The Auditor and her professionals conducted a random sampling of 200 checks for refunds that Capital One indicated on the DRR were already made. The Auditor thereafter certified on October

22, 2010 that the refund checks appear to have been sent by Capital One to those Debtors or trustees owed a refund, as reflected in the Distributions and Refund Report.[10]

Subsequent to the certification of DRR 1, Capital One provided the Auditor with two additional DRRs on November 22, 2010 ("DRR 2") and December 23, 2010 ("DRR 3"). DRR 2 and DRR 3 reflect the following changes from the prior DRR:

- DRR 2: updated the distributions and refund amounts for 73 claims and updated the withdrawal detail to reflect the Erroneous Claims that were withdrawn since DRR 1.
- DRR 3: removed 71 records from the DRR to reflect that such claims were not erroneous, did not need to be withdrawn and no refund was required; and updated the refund amounts for 656 claims and the distribution amount for 352 of these claims.

In sum, the DRR certified by the Auditor revealed that there appear to have been approximately 15,500 Erroneous Claims filed during the First Audit Period (January 1, 2005 through November 20, 2008) in the aggregate amount of approximately $24.7 million. Capital One received distributions in the bankruptcy cases in connection with approximately 5,100 of these Erroneous Claims, totaling in the aggregate approximately $2.35 million. To date, Capital One has refunded or is in the process of refunding this amount of approximately $2.35 million to the debtor-customers and/or trustees in the affected bankruptcy cases.

## III. NEXT STEPS

The Auditor has substantially completed the Audit with respect to the proofs of claim filed during the First Audit Period. There remain, however, the following additional items relating to the First Audit Period that the Auditor will be undertaking in the near term:

- *Whether closed bankruptcy cases are required to be re-opened for the purpose of allowing Capital One to withdraw proofs of claim erroneously filed?* The Auditor recently filed with the Court a series of recommendations regarding a process to deal with this issue. On January 4, 2011, the Court entered the Auditor's Recommendation Order. Among other things, the Auditor recommended that Capital One be required to re-open cases in which it had received distributions exceeding $2,000 or more based upon the prior filing of erroneous proofs of claim. The

[10] Capital One had previously refunded distributions, in whole or in part, on account of certain Erroneous Claims. The Auditor and her professionals examined the remediation report prepared by Capital One with respect to such refunds that were made in 2007 and compared it against the DRR to verify that the information was consistent.

Auditor will be monitoring Capital One's compliance with the procedures set forth in the Auditor's Recommendation Order.

- The Auditor will also be sending letters to the debtors and/or trustees in bankruptcy cases in which proofs of claim in the Objection Subset were filed by Capital One. The letters will request that the debtor and/or trustee provide the Auditor with information and back-up regarding all reasonable fees and expenses incurred in connection with the filing of objections to Erroneous Claims or commencement of adversary proceedings seeking to disallow Erroneous Claims. After a review of the information submitted by the debtors and/or trustees, the Auditor will make a recommendation as to the reasonable amount of fees and expenses to be reimbursed by Capital One in accordance with the Consent Order.

- The Auditor has established a publicly accessible website with the domain name www.CapOneBankruptcyAudit.com that will allow the viewing and downloading of the documents and information required to be provided to those debtors and trustees to whom correspondence from the Auditor is directed as described in the immediately preceding bullet point. The Auditor will be uploading relevant documents and information to the website.

- The Auditor will certify the subsequently delivered ECRs (6 and 7) and DRRs (2 and 3).

The Auditor and her professionals will begin the Audit relating to proofs of claim filed during the Second and Third Audit Periods (respectively, the "Second Audit" and the "Third Audit"). These subsequent Audits will be conducted concurrently. Capital One is expected to deliver the MCR for the Second Audit and the Third Audit by March 1, 2011, unless the parties mutually agree to adjourn this date, not to exceed thirty (30) days. The dates in which the MCR must be certified and all additional Reports delivered by Capital One and certified by the Auditor are set forth in the Sixth Amendment to Consent Judgment.

The Audit process, to date, has been lengthier than expected in large part as a result of the significant amount of data required to be produced and reviewed. Throughout the process, Capital One has been deliberative and responsive to the Auditor's requests and queries. Moreover, the Audit process could not have been completed as comprehensively as it was without the on-going cooperation of the United States Bankruptcy Courts, its Chief Bankruptcy Judges and the Court Clerks. Lastly, the First Audit has benefited from the

participation and insight of the Office of the United States Trustee as part of the oversight process.

Dated: New York, New York
January 18, 2011

/s/ Melanie L. Cyganowski
MELANIE L. CYGANOWSKI